## Case No. 15,427.

UNITED STATES v. HUNTER.

[5 Mason, 229.] [1]

Circuit Court, D. Rhode Island. Nov. Term, 1828.

INSOLVENCY—ACTIONS BY ASSIGNEE—PRIORITY OF UNITED STATES.

1. Where the assignee of an insolvent debtor recovers a demand, and expenses are incurred thereby, the latter are a charge on the fund, and the right of priority of payment of the United States attaches on the residue.

[Cited in U. S. v. Eggleston, Case No. 15,027.]
[Cited in brief in Jack v. Weiennett, 115 Ill. 107, 3 N. E. 445.]

2. The United States are not bound to contribute, pro rata, for the sum due to them.

This was a bill in equity, upon the coming in of the answer to which, and a hearing thereupon, the case was by an interlocutory decree of the court referred to a master at the June term last. [Case No. 15,426.] And now, at the present term, the master made his report. That part of it, which related to the question hereinafter raised, was as follows: "I find and report, that the claim of the United States on the two judgments set forth in the pleadings, amounts on the 15th day of November inst. to the sum of $5064.17; that the said William Hunter received from the treasury of the United States, on the claim set out in the pleadings, $8158.81; from which sum I have deducted $1386.04 for the said Hunter's services, commissions, and expenses, in preferring and prosecuting the claim before the board of commissioners, and for receiving the money from the treasury of the United States, leaving a balance in his hands of $6772.78, subject to the claim of the United States. The defendant contended at the hearing, that the United States were bound to contribute towards the expenses, which had accrued in recovering the money, in proportion, as their debt bore to the whole amount recovered by the defendant from the United States on the claim in question; and that the same should be deducted from their debt. But I have decided, that the expenses should be deducted from the gross amount recovered on the claim; and that the priority of the United States attached on the residue, from and out of which they were entitled to receive their debt in full, if sufficient remained for that purpose."

Upon the coming in of the report, the defendant insisted, by way of exception, on the point respecting contribution, which he had contended for before the master, and which was overruled by the master.

Mr. Greene, Dist. Atty., in support of the report.
Mr. Robbins, for defendant.

## Case No. 15,428.

UNITED STATES v. THE HUNTER.

[Pet. C. C. 10.] [1]

Circuit Court, D. New Jersey. April Term, 1806.

SHIPPING—PUBLIC REGULATIONS—UNLADING WITHOUT PERMIT—LIBEL OF FORFEITURE—CONSTRUCTION OF STATUTES.

1. A merchant vessel, from which goods are unladen without a permit, after her arrival within the limits of the United States, but before she has reached her port of destination, is not liable to forfeiture under the act of congress, passed March 2, 1799 [1 Stat. 627].

[Disapproved in The Sarah Bernice, Case No. 12,343. Followed in The Active, Id. 33. Cited in U. S. v Twenty Cases of Matches, Id. 6,559; The Coquitlam, 57 Fed. 713.]

2. When a libel is filed, claiming a forfeiture of the vessel libelled, and the facts of the case do not authorise the forfeiture alleged in the libel, but show an offence against other provisions of the same law, under which the forfeiture is asserted to have arisen, the court will dismiss the libel.

3. When the intention of the legislature by the words of a statute is improbable, the court will give a construction to the law.

[Appeal from the district court of the United States for the district of New Jersey.]

The libel in this case stated, that this vessel, being bound from a foreign port to the United States, after her arrival within the limits of the United States, and before she had come to the proper place for the discharge of her cargo, or any part thereof, and before she was authorised to do so by the proper officers of the customs, did unlade six puncheons of foreign distilled spirits, which were landed at a place within the jurisdiction of the court without a permit, &c., with a view to defraud the United States, &c., and that J. Heard, now collector of the customs, did seize the said six puncheons of rum, &c. The claim and answer denied the facts stated in the libel, and the jury having found for the United States, the court passed sentence of condemnation, from which an appeal was entered to this court. [Case unreported.]

---

[1] [Reported by William P. Mason, Esq.]     [1] [Reported by Richard Peters, Jr., Esq.]

The first point made in the cause was the same as in the case of U. S. v. The Virgin [Case No. 16,625]. Second. That the case stated is that of a vessel, not arrived at her port of discharge, which is provided for by the 27th section of the law (3 Laws [Bior. & D.] 162 [1 Stat. 648, c. 22]), and is punishable only by a fine of 1,000 dollars, on the master or person having charge of the vessel, and a forfeiture of the article. The 28th section forfeits the vessel, receiving the goods so unladen from another, before she has reached her port of discharge. The 50th section (3 Laws [Bior. & D.] 183 [1 Stat. 665, c. 22]) forfeits the vessel if the goods so unladen are not of the value of 400 dollars, and imposes a fine of only 400 dollars on the master; but in that case, the vessel must have arrived at her port of discharge when the unlading took place. This is plain, from the whole structure of the law. The penalties in the two sections, and the persons liable under each, are different. The reason is obvious. Before the vessel arrives in port, she is under the control of the master; it would be unjust to punish the owner, and therefore the master is to pay 1,000 dollars. After she is in port she is under the eye of the owner, and he may be punished by the forfeiture of the vessel, and therefore the penalty on the master is reduced to 400 dollars. Third. The offence is not stated in the libel to have been committed within the jurisdiction of this court; no place within the jurisdiction of the court is stated where the rum was landed. Fourth. The court admitted the libel in a former case against four puncheons of rum, and the sentence by which it was condemned, to be read in evidence in this case; whereas it did not appear on the face of that libel that this rum came from on board the Hunter, nor was there any thing in the proceedings to connect the two cases together. It should have appeared to have been one and the same transaction; and if it did not so appear on the face of the record, it could not be helped out by parol evidence. Esp. 44; Parker, 31.

WASHINGTON, Circuit Justice. The second objection is conclusive, and therefore it will not be necessary to consider the others. The question under it is, whether a vessel, from a foreign port destined to the United States, is liable to forfeiture for unlading any part of her cargo, after she has arrived within the limits of the United States, but before she has reached her port of discharge, without a permit from the proper officer? This is the offence laid in the libel. The 27th section provides for this very case, and punishes the master or other officer who unlades the cargo, but does not forfeit the vessel. The 50th section subjects such a vessel to forfeiture, if after her arrival within the United States, she unlades any part of her cargo without a permit. Does this 50th section meet the case laid in the libel, or refer to a vessel after her arrival at her port of discharge? The words are certainly general and broad enough, because it is stated that the Hunter had arrived within the United States. But ought not the law to be so restrained in its construction as to apply only to vessels in port? If it be not restrained, then there are two sections of the same law, on the same subject, giving double penalties for the same offence, viz: 1,000 dollars under the 27th section, and 400 dollars under the 50th section. The legislature may certainly do this if they please, but it is very improbable that such should be their intention. The law is then open to construction. The whole of this law previous to the 30th section, relates to vessels before their arrival in port, and it is clear that the 27th section applies to them only in that situation. The 30th section considers them as arrived, and from that to the 49th section, the act regulates the conduct of the master, and the officers of government, as to the steps preliminary to the last act to be done, viz: the permit to land the cargo. The 49th section states, that the duties being paid or secured, the proper officer is authorised to grant a permit to land the cargo, which had before been reported or entered. Immediately after and in its proper place follows the 50th section, inflicting a penalty on the master, and a forfeiture of the goods unladed, without such permit or a special license. Now this permit cannot be granted unless a vessel is arrived at her port, nor until the previous steps required by law have been taken. In a case of a landing from necessity under the 27th section, no license or permit is necessary, or can be granted. The 50th section then, which constitutes the crime of landing without a permit, must necessarily be confined to a landing after the vessel has reached her port of discharge, because to obtain a permit she must be in port. The object of the libel being to forfeit the vessel, and it not stating a cause within the 50th but within the 27th section, the sentence of condemnation must be reversed. The decree of the district court reversed.